NOTICE

Decision filed 02/16/24. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2024 IL App (5th) 220529-U

NO. 5-22-0529

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | St. Clair County. |
| | ) | |
| v. | ) | No. 20-CF-1135 |
| | ) | |
| KOURTNEY J. JACKSON, | ) | Honorable |
| | ) | John J. O'Gara, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE McHANEY delivered the judgment of the court.
Justices Cates and Boie concurred in the judgment.

**ORDER**

¶ 1    *Held:* Where the trial court properly conducted a *Krankel* hearing, its decision to deny the defendant's motion for a new trial is affirmed.

¶ 2    Following his conviction on a charge of child pornography (720 ILCS 5/11-20.1(a)(1) (West 2020)), the defendant, Kourtney J. Jackson, filed a *pro se* motion for a new trial. The defendant did not explicitly state anything in his *pro se* motion related to his attorney that would entitle him to a hearing pursuant to *People v. Krankel*, 102 Ill. 2d 181 (1984). Nevertheless, the trial court determined that some of the defendant's claims might trigger a *Krankel* inquiry and, thus, undertook to conduct one. The trial court found that relief under *Krankel* was not required and did not appoint new counsel to look into the defendant's claims. The defendant appealed, arguing that although a *Krankel* hearing was not required, once the trial court undertook to conduct

1

one, the trial court was required to follow the proper procedures. The defendant submits that due to the trial court's failure to follow proper procedures, this case must be remanded for a new *Krankel* inquiry. For the reasons that follow, we affirm.

¶ 3                                    I. Background

¶ 4     Following a jury trial the defendant was convicted of child pornography and sentenced to six years in the Illinois Department of Corrections, followed by two years of mandatory supervised release.

¶ 5     The facts relevant to the defendant's appeal are set out as follows. The defendant and his brother, Demonte Brown, were hanging out with two girls from their high school, A.I. and B.B. The defendant was a senior, Brown was a junior, and both A.I. and B.B. were freshmen. A.I. performed oral sex on Brown, and the defendant later admitted that he recorded that act on Snapchat. The defendant also admitted that he had sex with A.I. that night as well. When A.I. later believed she was pregnant, word got around school that the defendant might be the father. After the defendant showed some students the video he had recorded, in an attempt to prove he that was not the father of A.I.'s baby, the defendant was interviewed by the police. After the defendant admitted that he had recorded the video and had sex with A.I., he was charged and indicted on one count of child pornography and one count of criminal sexual abuse. The State proceeded to trial only on count I, the child pornography offense. The State alleged the incident occurred between October 13 and 14, 2019. However, throughout the proceedings, the defendant argued that this incident occurred a few weeks earlier when he was actually 17 years old.

¶ 6     The defendant's first trial resulted in a mistrial because the jury could not reach a unanimous verdict. The State elected to try the defendant again. This time the State sought to introduce a non-IPI jury instruction, which was the definition of the word "child" as defined in

2

section 3 of the Abused and Neglected Child Reporting Act (325 ILCS 5/3 (West 2020)). In allowing the non-IPI instruction, the trial court ruled that it "accurately states the law" and it would "assist[ ] the jury in helping them use undefined terms" which would "ultimately assist them."

¶ 7    At the second trial, the State relied on the testimony of A.I. and numerous police officers involved in the case, the videos from the defendant's phone, and interviews with the defendant, in order to prove that he knew, or reasonably should have known, that A.I. was under 18 when he recorded a video of A.I. performing a sexual act. The defendant did not present any evidence, and the trial court denied defense counsel's motion for a directed verdict. The jury found the defendant guilty.

¶ 8    On July 13, 2022, defense counsel filed a motion for new trial, arguing that the State failed to prove the defendant guilty beyond a reasonable doubt; that there was no evidence that the defendant knew A.I. was under 18 at the time of the offense; and that the trial court erred in denying his motion for a directed verdict. On August 2, 2022, the defendant filed a *pro se* motion for new trial, contending that he had presented an affirmative defense that he did not know A.I.'s age; that at the time of the offense he was 17 years old and should have been adjudicated as a juvenile; that there should have been a forensic analysis of his Snapchat account to prove the incident had occurred prior to his eighteenth birthday because the Snapchat video stamp was changed to the incorrect date when he had transferred the video to his cellphone library; that the first trial was more diverse than the second trial which he claimed was a *Batson*[1] violation; that the jury instructions were prejudicial; and that the trial court should have reconsidered the directed verdict it previously denied.

---

[1]*Batson v. Kentucky*, 476 U.S. 79 (1986).

¶ 9    At the hearing on defense counsel's motion for new trial, the trial court indicated it also had reviewed the defendant's *pro se* motion for new trial and asked defense counsel whether he wanted to adopt and argue the claims raised in the defendant's *pro se* motion. Defense counsel elected to argue the claims he raised in the initial motion for a new trial, as well as some of the defendant's *pro se* claims. The State argued against all of the claims. After the parties presented their arguments, the trial court made a number of findings. Relevant to the issue on appeal, the trial court stated:

> "THE COURT: So, on *Batson* challenges and underlying pinnings of the jury and the venire panel, that claim is rejected by this Court.
>
> To the extent that counsel should have raised it, that claim is dealt with in what I guess could be ultimately a *Krankel* inquiry, and the Court would reject the *Krankel* inquiry and does not see the reason why that would have presented ineffective assistance of counsel to either claim *Batson* or to bring in a forensic expert. And so, on that, a *Krankel* hearing is denied at this point—or, I'm having it, to the extent that I am, and *Krankel* relief is rejected. I will not appoint new counsel to look into these claims. They don't state sufficient basis in this matter."

¶ 10    The trial court addressed the defendant's remaining claims and ruled that "all motions for post-trial relief are appropriately denied." The defendant filed a timely appeal.

¶ 11                                    II. Analysis

¶ 12    As an initial matter we note that both the defendant and the State agree that the defendant did not explicitly request a *Krankel* inquiry in his *pro se* motion for a new trial, nor did the defendant explicitly state anything in his *pro se* motion related to his attorney that would entitle him to a *Krankel* inquiry. The defendant asserts that although the trial court was not required to

4

conduct a *Krankel* inquiry, once the trial court undertook to conduct such an inquiry, it was required to do so properly. In support of his argument, the defendant relies on *People v. Schnoor*, 2019 IL App (4th) 170571, ¶ 80, where even though the trial court was arguably not required to conduct a *Krankel* inquiry, the *Schnoor* court evaluated the sufficiency of the inquiry and determined it was sufficient under the law. To trigger a *Krankel* hearing, a defendant must clearly assert a claim of ineffective assistance of counsel. *Schnoor*, 2019 IL App (4th) 170571, ¶ 67.

¶ 13    The State concedes that the trial court conducted a *Krankel* inquiry but contends that it did so properly. Whether the trial court properly conducted a preliminary inquiry pursuant to *Krankel* is a legal question reviewed *de novo*. *People v. Jolly*, 2014 IL 117142, ¶ 28.

¶ 14    In *Krankel*, our state supreme court imposed an obligation on a trial court to fully address a criminal defendant's *pro se* claims of ineffective assistance of counsel. *Krankel*, 102 Ill. 2d at 189. In *People v. Moore*, 207 Ill. 2d 68, 77-79 (2003), the supreme court established a two-step procedure for handling such claims. First, once the defendant brings his *pro se* claim to the trial court's attention, the trial court should first examine the factual basis of the defendant's claim to determine if it has merit. *Id.* "If the trial court determines that the claim lacks merit or pertains only to matters of trial strategy, then the court need not appoint new counsel and may deny the *pro se* motion." *Id.* at 78. However, if the defendant's allegation shows possible neglect of the case, the trial court should appoint new counsel to evaluate the defendant's claim. *Id.*

¶ 15    "The operative concern for the reviewing court is whether the trial court conducted an adequate inquiry into the defendant's *pro se* allegations of ineffective assistance of counsel." *Id.* In determining whether a *Krankel* inquiry was sufficient, a reviewing court should consider three factors: "(1) whether there was some interchange between the trial court and defense counsel regarding the facts and circumstances surrounding the allegedly ineffective representation, (2) the

5

sufficiency of defendant's *pro se* allegations of ineffective assistance, and (3) the trial court's knowledge of defense counsel's performance at trial and the sufficiency of the defendant's allegations on their face." *Schnoor*, 2019 IL App (4th) 170571, ¶ 71 (citing *Moore*, 207 Ill. 2d at 78-79). It should be noted that none of the factors are mandatory, and there is no bright-line rule about what is a sufficient inquiry and what is not. *Id.*

¶ 16    The defendant concedes that the trial court addressed each of his claims in his motion for a new trial. However, he alleges the trial court erred in not allowing him to argue his own claims and not giving him an opportunity to "specify and support his complaints" instead of allowing defense counsel to adopt and argue his *pro se* claims. In support of his argument, the defendant makes a general reference to *People v. Sanchez*, 329 Ill. App. 3d 59, 66 (2002). In *Sanchez*, the defendant on appeal argued that the trial court erred in failing to consider his *pro se* oral posttrial remarks alleging ineffective assistance of trial counsel. The defendant contended that the written posttrial motion presented by his new attorney at the sentencing hearing was prepared by his trial attorney and did not make ineffective assistance allegations. *Id.* We fail to see how *Sanchez* provides support for the defendant's contention that he should have been allowed to argue his own claims from his *pro se* motion for new trial even though he was represented by counsel who had also filed a motion for a new trial. Accordingly, the defendant's reliance on *Sanchez* is inapposite.

¶ 17    The defendant next contends that the trial court erred when it allowed the State to make arguments against all of the defendant's claims which had been raised by defense counsel. "[T]he purpose of *Krankel* is best served by having a neutral trier of fact initially evaluate the claims at the preliminary *Krankel* inquiry without the State's adversarial participation, creating an objective record for review." *Jolly*, 2014 IL 117142, ¶ 39. However, this purpose is circumvented when the trial court essentially allows the State to bias the record against a *pro se* defendant during the

preliminary *Krankel* inquiry. *Id.* In *Jolly*, the trial court permitted the State to extensively question the defendant and his trial counsel in a manner contrary to the defendant's *pro se* allegations of ineffective assistance of counsel and to solicit testimony from trial counsel that rebutted the defendant's claims. *Id.* ¶ 40. The *Jolly* court concluded that the trial court committed reversible error when it permitted the State to participate in an adversarial fashion during the preliminary *Krankel* inquiry where the defendant was not represented by counsel. *Id.*

¶ 18     Here, there is no evidence in the record that the State questioned the defendant or defense counsel or participated in an adversarial fashion. Both parties presented arguments on defense counsel's motion for a new trial which incorporated some of the arguments from the defendant's *pro se* motion. It was not until the trial court stated its findings on the record that the parties knew that the trial court had decided to conduct a preliminary *Krankel* inquiry.

¶ 19     During a trial court's preliminary *Krankel* inquiry, some interchange between the trial court and trial counsel regarding the facts and circumstances surrounding the allegedly ineffective representation is permissible and *usually* necessary in assessing what further option, if any, is warranted on a defendant's claim. *Jolly*, 2014 IL 117142, ¶ 30. However, contrary to the defendant's argument, the trial court is allowed to use its knowledge of defense counsel's performance at trial and determine the sufficiency of the defendant's allegations on their face. *Schnoor*, 2019 IL App (4th) 170571, ¶ 71. Furthermore, there is no bright-line rule about what is, and what is not, a sufficient inquiry. *Id.* Thus, we conclude that the trial court conducted a sufficient *Krankel* hearing.

¶ 20                                    III. Conclusion

¶ 21     For the foregoing reasons, we affirm the trial court's judgment.

¶ 22     Affirmed.

7